**Robert Edward GAYLE, Plaintiff,**

v.

**Officer C. BENWARE,
et al., Defendants.**

**No. 08 Civ. 8017(RMB)(FM).**

United States District Court,
S.D. New York.

April 20, 2010.

Robert Edward Gayle, Stormville, NY, pro se.

John Eric Knudsen, New York State Department of Law, Albany, NY, for Defendants.

### DECISION AND ORDER

FRANK MAAS, United States Magistrate Judge.

In this prisoner civil rights action pursuant to 42 U.S.C. § 1983, *pro se* plaintiff Robert Gayle ("Gayle") alleges that he was injured at the Green Haven Correctional Facility ("Green Haven") by several corrections officers ("Defendants") who used excessive force against him. (*See* Docket No. 2) (Compl.). The Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that Gayle did not properly exhaust his administrative remedies before commencing this suit. For the reasons set forth below, that motion, (Docket No. 23), is granted, and Gayle's complaint is dismissed without prejudice.[1]

### I. *Background*

The incident giving rise to this case occurred on June 24, 2008, and is described more fully in my Report and Recommendation to Judge Berman dated July 6, 2009 ("R & R") (Docket No. 15). Following the incident, Gayle spent three days

---

1. In September 2009, the parties consented to my addressing this motion on a dispositive basis pursuant to 28 U.S.C. § 636(c). (*See* Docket No. 20).

in a hospital, after which he was placed in the Special Housing Unit ("SHU")[2] at Green Haven, where he remained for twenty-eight days. (*See* Gayle Aff., dated Jan. 23, 2009) (Docket No. 12).

On or about June 30, 2008, Gayle submitted the first of two complaints to the Pro Se Office of this Court. (*See* Case No. 08 Civ. 7024, Docket No. 2). He submitted the second complaint to the Pro Se Office on or about July 3, 2008.[3] (*See* Docket No. 2). In both complaints, which later were consolidated, Gayle checked boxes indicating that he did not know whether Green Haven had a grievance procedure or whether it covered his claims. He also checked boxes indicating that he had not filed a grievance before commencing his suits.

In December 2008, the Defendants moved to dismiss Gayle's complaints on the ground that he had not exhausted his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a). (*See* Docket No. 7). During a subsequent telephone conference, Gayle maintained for the first time that he had been unable to file a grievance form because of his physical condition and because "no one would answer to [him] filing a grievance [when he was] put into [the] SHU after coming from the hospital." (*See* Dec. 11, 2008 Tr. at 3–5).

On the basis of this record, I concluded in the R & R that the Defendants' motion to dismiss should be denied because Gayle's allegations that Green Haven officials had prevented him from filing a grievance were not implausible. (*See* R & R at 9). Thereafter, on July 27, 2009, 2009 WL 2223910, Judge Berman accepted that recommendation. (Docket No. 18).

Subsequently, on August 18, 2009, defense counsel deposed Gayle at Green Haven. During that deposition, when Gayle was asked to explain the general procedures applicable to filing a grievance, he testified that, "[a]t the time, [he] had no knowledge, 'cause [he] didn't get involved in things in the facility ... [he] didn't know that [he could] grieve a matter." (*See* Decl. of John Knudsen, dated Oct. 6, 2009 ("Knudsen Decl."), Ex. A ("Gayle Dep.") at 9). He further admitted receiving a book or manual that explained how to file a grievance, but it is unclear whether he read and understood it. (*Id.* at 12–16). Gayle eventually acknowledged, however, that he now knows how to file a grievance: "Take a grievance application thing, fill it out, put it in the Grievance Committee box and wait to see what happens. They'll write you a note or something back." (*Id.* at 45).

Gayle further testified that he stopped a sergeant from the grievance committee a few days after he was placed in the SHU. (Id. at 10, 25). As he explained:

> I said to the sergeant that I would like to speak to him, and I'm not sure if he wrote it down on the notepad or something he had, and asked me what was the problem, and I believe I said I wanted to know what I was in the box for, I didn't do nothing, you know, suddenly somebody come over and you're getting your head bashed ... and you're going to throw me over there now.

(*Id.* at 23–24). Gayle testified that the sergeant told him "that he had to get to some other prisoners" and would return,

---

**2.** Gayle refers to this area of Green Haven as the "Solitary Housing Unit." (*Id.*).

**3.** The first suit was brought against "Officer Benwase" and three "John Doe" defendants. The second action was brought against Officer Benware and two other named correction officers.

but never did. (*Id.* at 9–10). Gayle indicated that when the sergeant failed to communicate further with him, he asked the desk officer for a grievance form, but learned they were out of stock. (*Id.* at 38). Gayle then wrote a letter to the sergeant on plain paper and gave it to an officer. The letter said: "Dear, sir, I would like to see you in pertaining to my reasons for being here in the box. Thank you, Mr. Gayle." (*Id.* at 35). Gayle asked the officer to take the letter because the sergeant had already toured the SHU. (*Id.* at 34). According to Gayle, the officer responded that Gayle

> was supposed to take it out there and put it in a box or something ... Maybe he didn't say box, maybe out there where the sergeant picks up his mail or something.

(*Id.*). Gayle could neither identify nor describe the officer who allegedly accepted his letter. (*Id.* at 28).

## II. *Applicable Law*

### A. *Summary Judgment*

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the court concludes that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and summary judgment must be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

In deciding a motion for summary judgment, the court must "view the evidence in the light most favorable to the party against whom summary judgment is sought and ... draw all permissible inferences in favor of that party." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir.1997). The Court must accept as true the non-moving party's evidence, if supported by affidavits or other evidentiary material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As such, "[c]onclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir.1998).

In adjudicating a motion for summary judgment, "[t]he court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried." *Fischl*, 128 F.3d at 55; *see also Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson.* 477 U.S. at 248, 106 S.Ct. 2505. Accordingly, "[i]f the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 84, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967); *Cities Serv. Co.*, 391 U.S. at 290, 88 S.Ct. 1575). *See also Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir.2003) (the " 'mere existence of

a scintilla of evidence' ... is ... insufficient to defeat summary judgment") (quoting *Anderson.* 477 U.S. at 252, 106 S.Ct. 2505).

 Although the same summary judgment rules are applicable when a party is proceeding *pro se,* "special latitude" is appropriate to ensure that a meritorious claim is not foreclosed simply because the papers submitted in opposition to the motion are worded inartfully. *See Morris v. Citibank, N.A.,* No. 97 Civ. 2127(JGK), 1998 WL 386175, at *2 (S.D.N.Y. July 8, 1998); *see also Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (*pro se* complaint should be held to a "less stringent standard[ ] than formal pleadings drafted by lawyers"); *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (pleadings should be read liberally and interpreted to "raise the strongest arguments that they suggest") (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)).

B. *Prisoner Litigation Reform Act*

 Under the PLRA, a prisoner must exhaust any available administrative remedies before he may challenge prison conditions in federal court. 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Moreover, the PLRA requires "proper exhaustion," which means "using all steps that the agency holds out, and doing so *properly.*" *Woodford v. Ngo,* 548 U.S. 81, 90, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) (emphasis in original).

The New York State Department of Correctional Services has implemented an Inmate Grievance Program ("IGP") which permits an inmate at a state prison such as Green Haven to file complaints with the facility's Inmate Grievance Resolution Committee ("IGRC"). *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.1(c). The inmate can appeal an adverse IGRC decision to the facility superintendent, and can further appeal to a committee of central office staff ("CORC"). *Id.* The IGRC has sixteen days to respond to an inmate grievance. *Id.* § 701.5(b). If the IGRC fails to act within that time period, the inmate may appeal directly to the Superintendent. *Id.* § 701.6(g)(2).

If an inmate's grievance alleges employee harassment, the grievance clerk must forward the grievance directly to the facility superintendent the day it is received. *Id.* § 701.8(b). Harassment is defined as "employee misconduct meant to annoy, intimidate or harm an inmate." *Id.* § 701.2(e). The superintendent must decide a harassment grievance within twenty-five days. *Id.* § 701.8(f). If the superintendent fails to respond within this period, the inmate may appeal directly to CORC. *Id.* § 701.8(g).

The IGP regulations require that a supply of inmate grievance complaint forms be "maintained in all special housing areas and ... be given to inmates requesting them." *Id.* § 701.7(a) (1). In addition, an "IGRC staff member ... or grievance supervisor shall make rounds of all special housing areas ... at least once a week to allow inmates direct access to the program." *Id.* § 701.7(c)(1). If a grievance form is not available, an inmate also may submit a grievance on plain paper. *Id.* § 701.5(a)(1).

III. *Discussion*

 The Defendants accept Gayle's version of the facts for purposes of their motion, but maintain that the actions that he allegedly took were insufficient to grieve his complaint. Specifically, they ar-

gue that, because Gayle inquired only as to why he was in the SHU and failed to mention the June 24 incident, "no reasonable officer faced with [Gayle's] purported communications would interpret them as an attempt to file a grievance about the June 24 incident." (Defs.' Mem. at 6). The Defendants' contention is thus, in effect, that Gayle's complaint about his placement in the SHU differed from any complaint that he might have lodged relating to the use of excessive force. Here, however, Gayle was in the SHU as a direct result of the June 24 incident; his complaint about being in the SHU therefore related directly to the June 24 incident. The Defendants' argument regarding the substance of the grievance is consequently unavailing.

Nevertheless, if Gayle did not receive any response to the plain paper grievance that he allegedly attempted to file, he still was required to exhaust his IGP remedies. This required, in the first instance, that he pursue an appeal to the superintendent once the IGRC had been afforded sixteen days to consider his grievance. Subsequently, if the superintendent did not grant him the relief he sought, Gayle was further obligated to appeal to CORC. (Alternatively, if his grievance constituted an employee harassment complaint, Gayle would have been required to appeal to CORC once he afforded the superintendent twenty-five days to respond.) It is clear that Gayle made no effort to pursue any administrative appeal before seeking judicial relief. Indeed, the first complaint that he filed in this Court is dated June 30, 2008, which is only six days after the incident and only three days after he was placed in the SHU. Gayle therefore jumped the gun by filing his lawsuit before the IGRC (or superintendent) was afforded a full opportunity to respond.

■ Despite the mandatory language of the PLRA, the Second Circuit has indicated that there are limited circumstances in which a prisoner's failure to exhaust his administrative remedies fully may be excused. In determining whether such an exception is applicable, a district court must apply a three-part test: First, the court must determine whether administrative remedies in fact were available to the prisoner. *Abney v. McGinnis*, 380 F.3d 663, 667–68 (2d Cir.2004). Second, if such remedies were available, the court must determine whether the defendants' own actions inhibited the inmate's exhaustion of administrative remedies, thereby requiring that one or more of them be equitably estopped from raising the failure to exhaust as a defense. *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir.2004). Finally, if administrative remedies were available and the defendants are not estopped, the court must determine whether any special circumstances justify the prisoner's failure to comply with administrative procedural requirements. *Giano v. Goord*, 380 F.3d 670, 676 (2d Cir.2004).

■ Gayle's deposition testimony does not create a genuine issue of fact as to whether administrative remedies were available to him. Even if Gayle's attempts to file a grievance were frustrated in the manner he alleges, he had an obligation to treat the lack of response as a denial of his grievance and seek review from the superintendent or CORC. Instead of seeking such review, however, he filed two complaints in federal court-precisely what the PLRA was intended to avoid. There is no suggestion that any of the named Defendants in any way interfered with Gayle's ability to file or perfect his grievance. The Defendants therefore may not be estopped from raising a lack-of-exhaustion defense. Furthermore, the chronology of events persuasively shows that there are no spe-

cial circumstances warranting an exception to the PLRA administrative exhaustion requirement. Quite to the contrary, if Gayle was able to file two separate lawsuits within ten days of the incident, he clearly was capable of exhausting his remedies under the IGP before coming to this Court.

## IV. Conclusion

For the foregoing reasons, the Defendants' motion for summary judgment, (Docket No. 23), is granted, and Gayle's complaint is dismissed without prejudice. The Clerk of the Court further is respectfully requested to close this case.

SO ORDERED.